IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| International Union of Electrical, Salaried, Machine and Communications Workers of America, Local 84774, a local of the IUE-CWA, The Industrial Division of the Communications Workers of America (CWA), AFL-CIO, CLC | : : : : : : : | Case No. 1:09-cv-529<br><br>Chief Judge Susan J. Dlott |
| Plaintiff, | : : | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY |
| v. | : : | JUDGMENT AND DENYING DEFENDANT'S MOTION FOR |
| DuBois Chemicals, Inc. | : : | SUMMARY JUDGMENT |
| Defendant. | : | |

This matter is before the Court on Plaintiff's Motion for Summary Judgment (doc. 8) and Defendant's Motion for Summary Judgment (doc. 9). For the reasons that follow, the Court will **GRANT** Plaintiff's Motion and **DENY** Defendant's Motion. Further, the Court will compel Defendant to arbitrate the pending grievances.

I.  BACKGROUND

A.  **Factual Background**

Except where otherwise noted, this statement of facts is derived from the parties' submissions of undisputed facts. (Docs. 9-1, 10, 15-1, and 16.)

Plaintiff International Union of Electrical, Salaried, Machine and Communications Workers of America, Local 84774, a local of the IUE-CWA, The Industrial Division of the Communications Workers of America (CWA), AFL-CIO, CLC ("Local 84774") is the exclusive bargaining representative for certain employees at the Defendant's Sharonville, Ohio facility.

1

Defendant DuBois Chemicals, Inc. ("DuBois") is a chemical company specializing in pretreatment, process cleaning, water treatment and biological controls.

Prior to September 26, 2008, DuBois' assets were owned by Johnson Diversey, Inc. Local 84774 had a collective bargaining agreement with Johnson Diversey covering the thirty-eight production employees at the Sharonville facility which ran through March 2012. On or about September 22, 2008, the employees of Johnson Diversey working at the Sharonville facility were informed by letter that DuBois was purchasing the plant. The letter informed the employees that DuBois intended to maintain the majority of the terms and conditions of employment provided in the collective bargaining agreement with Johnson Diversey. Local 84774 also received formal notice of the sale of the facility. The notices stated that DuBois intended to "hire all bargaining unit employees working at the plant." Pursuant to the Asset Purchase Agreement between Johnson Diversey and DuBois, DuBois agreed to hire all active employees of Johnson Diversey at the time of sale, plus any employees on medical leave who could return to work within six months of the closing date of the sale. (DiMasso Aff. ¶ 4 & Ex. A.)

On or about September 26, 2008, DuBois became the new owner of the Sharonville facility. By letter of the same date, DuBois notified the employees that it had entered into a collective bargaining agreement ("DuBois CBA")[1] with Local 84774. The DuBois CBA is effective from September 27, 2008 through March 1, 2012. The DuBois CBA contains a grievance procedure at Article XII. Article XII provides for Local 84774 to submit grievances

---

[1] A copy of the DuBois CBA is attached to the Complaint at CM/ECF document 1-1 Ex. A.

on behalf of "employees" to the company and to appeal their grievances in arbitration. (CBA, Art. XII § 1.) Additionally, the DuBois CBA provides for arbitration of "policy grievance[s] of a plant-wide nature." (*Id.*, Art. XII § 5.)

The DuBois CBA provides the arbitrator with the following authority:

> The arbitrator shall be limited to determining questions involving the interpretation, application or alleged violation of the terms of the Agreement. He/she shall have no authority to add to or subtract from or to change any terms of this Agreement, including existing wages, or to arbitrate the terms of any new contract. By mutual agreement of the Company and the Union, more than one grievance may be heard by the arbitrator at one hearing.

(*Id.*, Art. XII § 1.) The DuBois CBA also contains provisions addressing the seniority of "employees" in Article IX and leaves of absence for "employees" in Article XIV. (*Id.*, Arts. IX and XIV.)

At the time the Sharonville facility was sold, two members of Local 84774 who had worked at the Sharonville facility, Richard Snow and David Lawson, were on medical leave. Snow and Lawson had to return to work by March 26, 2009 in order to be hired by DuBois pursuant to the Asset Purchase Agreement. (Dimasso Aff. ¶ 7.) Neither Snow nor Lawson returned to work by March 26, 2009 and DuBois asserts that it did not hire either union member as its employee at the facility. (*Id.* ¶¶ 9, 12.) Rather, Dubois asserts that Snow and Lawson remained employees of Johnson Diversey. (*Id.* ¶ 14.)

In April 2009, Local 84774 filed "Policy Grievance[s]" on behalf of the Snow and Lawson based on the seniority and leave of absence provisions in the DuBois CBA. (Doc. 1-1 Exs. B & C.) Specifically, Local 84774 grieved the "dismissal" of Snow and Lawson and requested that they "be returned to full employment." (*Id.*) DuBois submitted a joint response to the grievances dated April 14, 2009 in which DuBois stated that Snow and Lawson had not been

3

hired by the company and that the grievances were "not recognized and [would] not be processed." (DiMasso Aff. ¶ 15 & Ex. F.) Local 84774 then filed what it termed a "policy" grievance based on DuBois' failure to process the Snow and Lawson grievances. (Doc. 1-1 Ex. D.) On May 7, 2009, Local 84774 submitted the three grievances to arbitration. (*Id.* Exs. E-G.) On May 19, 2009, DuBois indicated in three separate letters that it would not participate in arbitration on the grievances because Snow and Lawson were not employees of DuBois. (*Id.* Exs. H-J.)

**B. Procedural Background**

On July 28, 2009, Local 84774 filed in this Court a Complaint/Petition to Compel Arbitration pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Section 301 of the LMRA provides in relevant part that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Local 84774 contends that the Court should compel DuBois to arbitrate the three pending grievances. DuBois filed an Answer admitting jurisdiction, but asserting that the DuBois CBA does not permit it to process or arbitrate grievances filed by non-employees. The parties now have filed the pending cross-Motions for Summary Judgment.

**II. STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56 governs summary judgment motions. Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is

4

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## III.  ANALYSIS

DuBois contends that only its employees are permitted to file grievances pursuant to the DuBois CBA and that it cannot be compelled to arbitrate purported grievances initiated by non-employees. Local 84774 contends that the grievances were properly submitted pursuant to the DuBois CBA and DuBois should be compelled to participate in arbitration. More fundamentally, Local 84774 argues that the arbitrator, not this Court, should resolve the parties'

5

dispute regarding the arbitrability of the grievances.

The Supreme Court has identified four key principles regarding the arbitrability of disputes. First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted). Second, "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *Id.* at 649. Therefore, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* Third, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.* Fourth, "it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 650 (internal quotation and citations omitted). "Doubts should be resolved in favor of coverage." *Id.* (internal quotation and citations omitted).

In determining whether a particular matter is subject to arbitration, the Supreme Court has differentiated between substantive questions of arbitrability and procedural questions. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964). The issue in *John Wiley & Sons* was whether the arbitration provisions in a collective bargaining agreement between a union and the predecessor company with which John Wiley & Sons had merged was binding upon John Wiley

& Sons after the merger. *Id.* at 546. The Supreme Court held that the issue was for the courts. *Id.* at 546-47. "The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." *Id.* at 547. However, "once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Id.* at 557. Some courts have held that an issue concerning "the standing of a party to the arbitration" is a procedural issue to be determined by the arbitrator, "so long as the subject matter of the dispute is within the arbitration clause." *Chicago Typo. Union No. 16 v. Chicago Sun-Times, Inc.*, 860 F.2d 1420, 1424 (7th Cir. 1988); *see also Steelworkers v. Smoke-Craft, Inc.*, 652 F.2d 1356, 1360 (9th Cir. 1981) (stating that the issue of a party's standing to the arbitration was a procedural matter for the arbitrator).

The Supreme Court clarified the distinction between substantive questions of arbitrability and procedural questions in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). The Court stated in relevant part as follows:

> Linguistically speaking, one might call any potentially dispositive gateway question a "question of arbitrability," for its answer will determine whether the underlying controversy will proceed to arbitration on the merits. The Court's case law, however, makes clear that, for purposes of applying the interpretive rule, the phrase "question of arbitrability" has a far more limited scope. The Court has found the phrase applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.
>
> Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for a court to decide.

7

> Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court.
>
> At the same time the Court has found the phrase "question of arbitrability" not applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter. Thus "procedural" questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide. So, too, the presumption is that the arbitrator should decide allegation[s] of waiver, delay, or a like defense to arbitrability.

*Id.* at 83-84 (internal citations and quotations omitted).

Consistent with these precedents, the Sixth Circuit has instructed that "the limited function of the federal courts is to ascertain[ ] whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United SteelWorkers of Am. v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 419 (6th Cir. 2007) (internal quotation and citation omitted). "[I]f an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement." *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008) (citation omitted). Compelled arbitration is inappropriate where resolution of the dispute does not require reference to the collective bargaining agreement, "unless the intent of the parties indicates otherwise." *Id.*

Applying these cases to the facts at hand, the Court concludes that DuBois should be compelled to arbitrate the grievances. Local 84774 and DuBois, the parties to the DuBois CBA, do not dispute that they are bound by a collective bargaining agreement with a broad arbitration clause. The DuBois CBA gives an arbitrator the authority to "determin[e] questions involving the interpretation, application or alleged violation of the terms of the Agreement." (CBA, Art. XII § 1.) Thus, there is a presumption of arbitrability. *See AT&T Techs.*, 475 U.S. at 650.

DuBois challenges the arbitrability of the grievances on the grounds that Snow and

Lawson are not employees and are not entitled to assert grievances pursuant to the DuBois CBA. However, DuBois' challenge pertains to the standing of Snow and Lawson, a matter which is a procedural issue for the arbitrator to address. *See Chicago Typo. Union No. 16*, 860 F.2d at 1424; *Smoke-Craft, Inc.*, 652 F.2d at 1360. Additionally, the resolution of the grievances likely will require interpretation of the DuBois CBA. Local 84774 asserts in the grievances that Lawson and Snow were wrongfully dismissed. (Doc. 1-1, Exs. B-C.) Local 84774 specifically cites to seniority and leave of absence provisions in the DuBois CBA to support the grievances. (*Id.*; CBA, Arts. IX and XIV.) The DuBois CBA contains several other provisions addressing whom qualifies as an employee with rights under the agreement in addition to the provisions addressing seniority and leaves of absence. (CBA, Art. II; *Id.* Art. III §§ 1, 2.)[2] Arbitrators have

---

[2] For example, Article II of the DuBois CBA states that Local 84774 is the "exclusive collective bargaining agent for all product and maintenance employees at the Company's plant." (CBA, Art. II § 1.) It also states that the terms "production and maintenance employees" or "employees" shall mean "all employees engaged in production or maintenance," but shall "exclude" certain other categories of employees. (*Id.*, Art. II § 2.)

Further, in Article III, the DuBois CBA provides:

> Section 1.    (a) Any employee who is a member of the Union on the effective date of the Agreement shall maintain his/her membership in good standing as a condition of employment for the life of this Agreement.
>
> * * * *
>
> (c) Any employee hired on or after the effective date of this Agreement shall become a member of the Union upon completion of thirty (30) days worked, and he/she shall, as a condition of employment, maintain his/her membership in the Union in good standing for the life of this Agreement.
>
> * * * *
>
> Section 2.    Until an employee, excluding temporary help, has completed ninety (90) days worked consisting of no less than 720 hours actually

"greater institutional competence" to interpret and apply the provisions of a collective bargaining agreement. *United States v. U.S. Tsubaki, Inc.*, 587 F. Supp. 2d 321, 325 (D. Mass. 2008) (citation omitted). The need for contract interpretation plus the presumption of arbitrability lead to the Court's conclusion that the parties' dispute is a procedural issue for the arbitrator.

Additionally, the Court's conclusion is buttressed by the holdings in analogous cases. In *U.S. Tsubaki*, the district court held that a dispute concerning whether the grievants were employees with standing to initiate arbitration pursuant to a collective bargaining agreement was for the arbitrator to decide. The applicable collective bargaining agreement barred probationary employees from grieving the termination of their employment. *See id.* at 323. The collective bargaining agreement contained specific provision defining the term "probationary employee" and a broad arbitration provision that "clearly provide[d] that disputes about the interpretation and/or application of the terms of the CBA are to be resolved in arbitration." *Id.* The district court held that the question of whether grievants were probationary employees and whether they were entitled to arbitration were procedural issues for the abitrator. *See id.* at 326-27; *see also Hospital & Healthcare Workers' Union, Local 250 v. San Benito Health Found.*, No. 92-17028, 1994 WL 107998, at *2 (9th Cir. Mar. 29, 1994) ("[W]e conclude that the question whether

---

> worked, he/she shall be considered a probationary employee and not subject to the terms of this Agreement except as to wages and hours. The Company shall be the sole judge of the requirements and qualifications of applicants for work and shall be the sole judge of the qualifications of such probationary employees for retention by the Company. Unless a probationary employee shall have been notified of his/her termination no later than the last hour of work on his/her 90th day, 720 hours actually worked, described above in this Section; he/she shall automatically become a regular employee.

(*Id.*, Art. III.)

Bueno was a probationary employee at the time she was terminated must be submitted to an arbitrator.") Similarly, a court in this District held that where an arbitration clause authorized arbitration for disputes between "a customer and a member," the issue of whether a claimant was a customer was for the arbitrator to determine. *O.N. Equity Sales Co. v. Finra Dispute Resolution, Inc.*, No. 1:07cv804, 2008 WL 281788, at *4-5 (S.D. Ohio Feb. 1, 2008). It follows from these cases that the arbitrator, not this Court, should determine whether Snow and Lawson were employees with standing to assert their grievances against DuBois.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (doc. 8) is **GRANTED** and Defendant's Motion for Summary Judgment (doc. 9) is **DENIED**. DuBois Chemicals, Inc. is **ORDERED** to arbitrate the pending grievances.

IT IS SO ORDERED.

S/Susan J. Dlott
Chief Judge Susan J. Dlott
United States District Court
